UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE W., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C18-5558-BAT <br><br> **ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE** |

Plaintiff Julie W. seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred in evaluating the medical evidence and her testimony, and that the resulting residual functional capacity finding and finding of nondisability are thus erroneous. Dkt. 12. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff is currently 49 years old, has a high school education and has worked as a bagger. Tr. 42, 55, 279. In April 2015, she applied for benefits, alleging disability as of February 2014. Tr. 279, 286. After her applications were denied initially and on reconsideration, the ALJ conducted a hearing and, on May 12, 2017, issued a decision finding plaintiff not disabled. Tr.

11-25. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that plaintiff had not engaged in substantial gainful activity since alleged onset date, she had the following severe impairments: multiple sclerosis (MS) and affective disorder, and these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 13. The ALJ found that plaintiff had the residual functional capacity to perform sedentary work with additional limitations. Tr. 15. The ALJ found that plaintiff could not perform her past relevant work but, as there are jobs that exist in significant numbers in the national economy that she can perform, plaintiff is not disabled. Tr. 23-25.

## DISCUSSION

**A.  Medical evidence**

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence. In general, the ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

*1.  Mental health evidence*

Plaintiff describes the findings from various mental health treatment notes, asserting that this evidence "shows that [plaintiff's] depression has been causing some significant mental

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 2

functional limitations, and it provides objective evidentiary support for [plaintiff's] testimony about these limitations." Dkt. 12 at 3. But merely pointing to the existence of evidence and asserting that it supports plaintiff's testimony does not establish that the ALJ erred in evaluating the medical evidence. It is the province of the ALJ to evaluate and weigh the evidence, and the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). If the evidence is subject to more than one rational interpretation, the court must uphold Commissioner's conclusion. *Id.* Plaintiff has not shown that the evidence she discusses undermines the ALJ's interpretation of the evidence overall, or that the ALJ's interpretation of the evidence was irrational. The mere existence of this evidence does not establish error in the ALJ's decision.

   *2.     Dr. May*

Gregory May, Psy.D., conducted an examination in June 2015 and diagnosed major depressive disorder, recurrent, mild, and cannabis use disorder, moderate, early remission. Tr. 475-79. He conducted a mental status examination that he opined was "reflective of normal functioning and any errors made are considered minor." Tr. 478. He opined that based on current psychological, cognitive, and emotional functioning, plaintiff was likely to be unsuccessful at employment at that time, but supported by sustained abstinence from marijuana and potential benefits of continued therapy, her prognosis of returning to sustained employment in three to nine months was good. *Id.* He believed she was most likely to be successful at entry-level positions where interpersonal interactions were not required or severely limited. *Id.*

The ALJ gave partial weight to this opinion. Tr. 22. The ALJ noted that Dr. May believed plaintiff would be able to return to work in three to nine months, which is less than the durational requirement for disability benefits. *Id.* The ALJ disagreed with the portion of Dr. May's opinion

that plaintiff was unable to work in June 2015, but found his comments regarding her being best suited to entry-level work, which is consistent with performing simple, routine tasks, to have persuasive value. *Id.* And the ALJ found that the longitudinal mental health treatment notes from the same time period as this evaluation showed that plaintiff's social limitations were not as great as Dr. May believed them to be. *Id.*

Plaintiff argues that the fact that the ALJ disagreed with the opinion is not by itself a valid reason to reject it. Dkt. 12 at 4. The court agrees. The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). The ALJ's conclusory statement that he disagreed with a portion of the opinion was not a valid reason to reject it. But this was not the only reason the ALJ gave for rejecting this portion of the opinion.

The ALJ also found that the opinion was inconsistent with the longitudinal treatment record from the same time period. Tr. 22. The ALJ found that treatment records from Columbia River Mental Health Services (CRMHS) from August 2014 through June 2016 did not objectively describe disturbances of mood, affect, or sensorium so severe as to preclude full time work activity. Tr. 21. The ALJ found that the overall record showed her interacting appropriately with treatment providers and examining clinicians and having visits with her son at a local shopping mall, which was evidence that she could tolerate interacting with others, and that her ability to engage in treatment at CRMHS and other social service agencies was persuasive evidence that she possessed the ability to perform simple, routine tasks. *Id.*

Plaintiff asserts that the treatment notes from CRMHS contain many clinical findings that are consistent with Dr. May's opinion and that the ALJ almost entirely failed to discuss these

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 4

findings. Dkt. 12 at 4. Plaintiff identifies treatment notes where providers noted mildly dysthymic mood, fatigue, mild agitation, and unkempt appearance. *Id.* at 2-3. But the ALJ discussed some of these very observations, and also identified treatment notes that found euthymic mood, reduced fatigue, calm and cooperative presentation, and adequate grooming. Tr. 20-21. Plaintiff asks the court to find that the notes she identifies undermine the ALJ's assessment of the treatment notes as a whole. But this the court cannot do. The ALJ considered the longitudinal treatment record from CRMHS and interpreted it in a rational manner, finding it inconsistent with Dr. May's opinion that plaintiff was unable to work in June 2015. An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ's finding that Dr. May's opinion that plaintiff was unable to work in June 2015 was inconsistent with the contemporaneous treatment records was a valid reason to reject that portion of the opinion.

Because the ALJ gave a specific and legitimate reason to reject Dr. May's opinion that plaintiff was unable to work in June 2015, the court upholds the ALJ's assessment of the opinion.

### 3. *Physical health evidence*

As with the evidence related to her mental health treatment, plaintiff describes the findings from various treatment notes pertaining to her physical health and asserts that this evidence "shows that [plaintiff's] multiple sclerosis has been causing some significant functional limitations, including fatigue, and provides objective evidentiary support for [plaintiff's] testimony about her physical limitations, including fatigue." Dkt. 12 at 4-5. But, again, the mere existence of this evidence does not establish error in the ALJ's decision. Plaintiff's recitation of this evidence does not establish error in the ALJ's decision.

*4. Dr. Leinenbach*

Derek Leinenbach, M.D., examined plaintiff in June 2015 and diagnosed multiple sclerosis by history and hypothyroidism. Tr. 485-88. He described her physical examination as normal. Tr. 487. He opined that she had no exertional, postural, manipulative, environmental, or other limitations. Tr. 488.

The ALJ gave Dr. Leinenbach's opinion limited weight, finding that the longitudinal record showed that plaintiff's limitations were greater than Dr. Leinenbach opined. Tr. 22. The ALJ found, however, that Dr. Leinenbach's objective observations of plaintiff's performance during the examination were further persuasive evidence that plaintiff did not have a disabling physical impairment. *Id.*

Plaintiff asserts that the ALJ's analysis of this opinion is contradictory, arguing that if the opinion is indeed inconsistent with the longitudinal medical evidence, it should be entitled to little if any weight. Tr. 5. It is unclear what outcome plaintiff seeks by challenging the ALJ's assessment of this opinion. The ALJ gave the opinion limited weight, making plaintiff's argument that the opinion is entitled to little or no weight in line with the actual outcome. And the ALJ's finding that Dr. Leinenbach's objective observations add to the weight of the evidence that plaintiff does not have a disabling physical impairment is not erroneous, even where the ALJ has rejected the doctor's assessment of those objective observations. The court will not disturb the ALJ's assessment of Dr. Leinenbach's opinion.

*5. Non-examining physicians*

State-agency consultant John Gilbert, Ph.D., opined in June 2015 that plaintiff was moderately limited in the ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, interact
ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 6

appropriately with the general public, and respond appropriately to changes in the work setting; he opined that she was not significantly limited in other vocational areas. Tr. 171-72. Dr. Gilbert provided the following narrative assessment of plaintiff's concentration and persistence limitations: "Can carry out SRT [simple routine tasks] and most detailed tasks; may be inconsistent in CDT and attendance at times due to psych sx [symptoms] and subjective perception of pain, though is capable the majority of the time." Tr. 172. In October 2015, Diane Fligstein, Ph.D., agreed with Dr. Gilbert's assessment. Tr. 197-98. The ALJ found the opinions of Dr. Gilbert and Dr. Fligstein to be consistent with the record, and stated that the RFC finding incorporated cognitive and social limitations consistent with their assessments. Tr. 23.

Plaintiff argues that the RFC finding does not account for these doctors' opinion that plaintiff may have inconsistent attendance at times due to her psychiatric symptoms and her perception of pain. Dkt. 12 at 6. Plaintiff characterizes this opinion as showing that as much as 49% of the time, plaintiff's attendance may be inconsistent, and asserts that the ALJ improperly failed to include this limitation without explanation. *Id.*

This opinion is vague and does not provide any precise limitations that the ALJ should have included in the RFC finding. It is unclear what the doctors mean by "inconsistent" attendance, how often "at times" means, and, as something that "may" happen, whether or not this will even occur. Plaintiff asserts that the ALJ should have adopted the most extreme interpretation possible of this ambiguous opinion. But the ALJ was not required to interpret this vague opinion in the manner proposed by plaintiff. The ALJ accounted for the moderate limitations in concentration and persistence opined by these doctors. The court finds no basis to disturb the ALJ's assessment of these opinions.

*6.   Medical expert testimony*

Donald Blackman, M.D., provided medical expert testimony at the hearing. The first witness to testify at the hearing, he testified that although plaintiff's multiple sclerosis did not meet or equal the listing, it would impose some restrictions. Tr. 37. He opined that plaintiff would be limited to two hours standing and walking in an eight-hour workday, that lifting and carrying should be limited to 10 pounds occasionally and 5 pounds frequently, and her use of ladders, ramps, and rough surfaces should be very occasional or none. Tr. 38. With respect to the issue of fatigue, Dr. Blackman noted that fatigue is difficult to evaluate, but it is very common in multiple sclerosis. Tr. 37-38. He opined that, as it appeared that plaintiff was able to handle her daily activities, he would not include a restriction related to stamina or being able to sustain activity for a steady period of time. Tr. 39.

The ALJ gave Dr. Blackman's opinion great weight, finding that Dr. Blackman was well qualified to offer an opinion as to plaintiff's condition, the medical evidence and treatment records strongly support Dr. Blackman's opinion, and his opinion was well reasoned and persuasive. Tr. 22.

Plaintiff argues that because Dr. Blackman testified before plaintiff did, he was unable to evaluate her testimony, including her testimony regarding her fatigue, and his opinion about the functional effects of her fatigue is therefore entitled to limited weight. Dkt. 12 at 7. She points to 20 C.F.R. § 404.1527(c)(3), which provides that the weight given to the opinions of nonexamining sources depends on the degree to which they provide supporting explanations for their opinions, and that the ALJ will evaluate the degree to which these opinions consider all of the pertinent evidence.

This regulation requires the ALJ to evaluate whether an opinion considered all of the evidence, not that an opinion is entitled to any particular weight based on the outcome of this evaluation. The ALJ found that Dr. Blackman's opinion was well supported by the documentary evidence, finding that Dr. Blackman cited to specific evidence of record to support his opinion and described plaintiff's response to prescribed treatment as evidenced by clinical observations and her subjective reports. Tr. 22. This was a valid reason to give the opinion great weight. *See Lester*, 81 F.3d at 830-31. The ALJ did not err by giving weight to the opinion despite the fact that Dr. Blackman did not consider plaintiff's testimony.

### B. Plaintiff's testimony

Plaintiff argues that the ALJ failed to properly evaluate her testimony. The ALJ did not find that plaintiff was malingering and was thus required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3 at 834.

Plaintiff first argues that the errors she alleged in the ALJ's evaluation of the medical evidence taint the ALJ's evaluation of plaintiff's testimony. Dkt. 12 at 8. As the court has rejected plaintiff's allegations of error with respect to the ALJ's evaluation of the medical evidence, this argument fails.

Plaintiff next argues that the ALJ erred in relying on the differing reasons plaintiff gave for stopping work. Dkt. 12 at 8. The ALJ noted that in a statement plaintiff submitted to the Social Security Administration, she gave the following reason for stopping work on her alleged onset date: "Due to unforeseen medical symptoms and other circumstances I was unable to

complete my job assignment and resume without doctor authorizations." Tr. 322. The ALJ found, however, that the record did not support this allegation, as there was no statement from any treatment provider excusing her from work. Tr. 16. The ALJ also noted that elsewhere in the record, plaintiff stated that in 2013, she lost a job she had held for seven years after she was arrested and jailed for 30 days, and could not be rehired at that job due to her criminal conviction. Tr. 477. Plaintiff also reported that in February 2015, she quit her part-time job after two weeks in order to supervise her son, explaining that "when her son is not at school he requires constant supervision, preventing her from being able to sustain employment." *Id.* The ALJ found that it appeared that plaintiff did not stop working due to health issues but rather due to her express decision to take care of her son. Tr. 16. The ALJ stated that neither plaintiff's criminal history nor her parental obligation is a basis for awarding disability benefits. *Id.*

Plaintiff argues that the reason she stopped working in 2013 is irrelevant, as she is not alleging disability since 2013. Dkt. 12 at 8. And she asserts that her criminal history and her parental obligation are irrelevant because she is not claiming she is disabled for these reasons and these are not the reasons she is unable to sustain full-time work. *Id.* But an ALJ can properly discount a claimant's testimony in part due to fact that she left her job for reasons other than her alleged impairments. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff's statements about her inability to return to her long-term job because of a criminal conviction and stopping work because of her need to supervise her son contradict her claims that she stopped working due to disabling impairments. This was a valid reason to discount plaintiff's testimony.

Plaintiff next argues that in finding that the medical record did not support plaintiff's allegation of disability, the ALJ erred in two ways: first, because the ALJ cannot reject a claimant's subjective testimony solely because objective evidence does not support it, and

second, because the ALJ selectively discussed the medical evidence, failing to consider evidence that she asserts support her testimony. Dkt. 12 at 8-9.

Plaintiff's first argument fails. Although an ALJ may not reject a claimant's testimony solely because it is unsupported by objective evidence, it is a relevant factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, as discussed above, the ALJ gave other, valid reasons for rejecting plaintiff's testimony. The ALJ did not improperly rely on this reason only to reject plaintiff's testimony.

As to plaintiff's second argument, plaintiff repeats her argument from above that the ALJ ignored or failed to discuss clinical findings that support plaintiff's testimony. Dkt. 12 at 9. An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Id.* at 1394-95. Merely pointing to individual treatment notes the ALJ did not discuss does not establish error. The court finds that the ALJ did not err in evaluating the medical evidence or in finding that it did not fully support plaintiff's allegation of disability.

In sum, the court finds that the ALJ gave clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's testimony. The court will not disturb the ALJ's assessment.

**C.     RFC and step five finding**

Plaintiff concludes by arguing that the ALJ improperly formulated plaintiff's RFC and based his step five finding on this erroneous RFC assessment. Dkt. 12 at 12. However, plaintiff bases this argument on the assignments of error the court has rejected above. Because plaintiff

ORDER AFFIRMING THE COMMISSIONER AND
DISMISSING THE CASE - 11

has not identified harmful error in the ALJ's assessment of the medical evidence or plaintiff's testimony, this argument fails. The court finds no error in the ALJ's RFC finding or finding of non-disability at step five.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 26th day of March, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge